IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RAMEL LEE HOLLIMAN, | ) | |
| | ) | CASE NO. 1:15-CV-699 |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| | ) | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL | ) | KENNETH S. McHARGH |
| SECURITY ADMINISTRATION, | ) | |
| | ) | REPORT & RECOMMENDATION |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to Local Rule 72.2(b).  The issue before

the undersigned is whether the final decision of the Commissioner of Social Security

("Commissioner") denying Plaintiff Ramel Holliman's ("Plaintiff" or "Holliman") applications

for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act,

42 U.S.C. § 1381 *et seq*., and for a Period of Disability and Disability Insurance benefits under

Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, is supported by substantial

evidence and, therefore, conclusive.

For the reasons set forth below, the Magistrate Judge recommends that the decision of the

Commissioner be VACATED, and the case be REMANDED back to the Social Security

Administration.

## I.  PROCEDURAL HISTORY

Plaintiff filed applications for Disability Insurance benefits and Supplemental Security

Income benefits on May 3, 2012, alleging disability due to arthritis, obesity, and knee problems,

with an onset date of August 11, 2011.  (Tr. 109, 232, 239). The Social Security Administration

denied Plaintiff's applications on initial review and upon reconsideration.  (Tr. 118, 129, 139, 150).

Plaintiff requested that an administrative law judge convene a hearing to evaluate his applications.  (Tr. 169).  On June 5, 2013, an administrative hearing was held before an administrative law judge ("ALJ"). (Tr. 66-77). Plaintiff did not appear because he did not bring proper identification, although Plaintiff's attorney, Catherine Braun, appeared on his behalf.  (Tr. 68)  A vocational expert ("VE"), Carol Mosely, also appeared and testified.  (Tr. 66, 71-76).  A second hearing was held before the same ALJ on October 8, 2013, at which time Plaintiff, represented by counsel, testified, as did a second VE, Robert Breslin.  (Tr. 27-65).  On October 31, 2013, the ALJ issued a decision finding Plaintiff was not disabled.  (Tr.  14-26). After applying the five-step sequential analysis,[1] the ALJ determined Plaintiff retained the ability to

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability."  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1)     If a claimant is doing substantial gainful activity–i.e., working for profit–she is not disabled.

(2)     If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3)     If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4)     If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5)     Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

perform work existing in significant numbers in the national economy. (*Id*.). Subsequently, Plaintiff requested review of the ALJ's decision from the Appeals Council. (Tr. 7-9). The Appeals Council denied his request for review, making the ALJ's October 31, 2013, determination the final decision of the Commissioner. (Tr. 1-3). Plaintiff now seeks judicial review of the ALJ's final decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

## II. EVIDENCE

### A.  Personal Background Information

Plaintiff was born on May 24, 1984 and was 27 years old on the alleged onset date. (Tr. 109, 239). Plaintiff has an 11th grade education and has past work experience as a dish washer, yard man, and manual laborer/front loader driver. (Tr. 34, 40, 117). Plaintiff lives with his girlfriend. (Tr. 36).

### B. Medical Evidence[2]

Clinic notes from the Cleveland Clinic Department of Sports Health dated February 8, 2010 showed Plaintiff saw Anthony Miniaci, MD, for a work release note following a left knee injury sustained after falling when getting out of the shower on January 11, 2010. (Tr. 313). At that time the pain caused him to seek emergency medical attention at the emergency room, where X-rays showed no fracture or acute injury. (*Id.*). Plaintiff was diagnosed with knee sprain following the injury, but denied any numbness, tingling, instability or mechanical symptoms, or any pain whatsoever at the follow-up with Dr. Miniaci. (*Id.*). On evaluation Plaintiff exhibited full range of motion and negative test results, and it was determined his knee injury was resolved, and Plaintiff could resume activities as tolerated. (Tr. 313-14). At that time it was

---

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

[2] The following recital of Plaintiff's medical record is an overview of the medical evidence pertinent to Plaintiff's appeal. It is not intended to reflect all of the medical evidence of record.

documented that Plaintiff did not have difficulty performing or completing routine daily living activities.  (Tr. 315).

The record shows Plaintiff reported to the Bedford Medical Center emergency room on October 13, 2010 for a work-related sprained knee.  (Tr. 391).  Treatment report stated Plaintiff fell off of a ladder at work, causing pain in his right knee.  (Tr. 393-94).  X-ray records stated four views were taken of the *right* knee; however, the subsequent notes stated images of the *left* knee were obtained.  (Tr. 395).  The report indicated imaging showed minimal osteoarthritis, with mild spurring of the femur, patella, and tibia, with no joint effusion.  (*Id*).

On March 24, 2011, Plaintiff presented at the Marymount North Hospital emergency room complaining of moderate left knee pain after running after his nephew.  (Tr. 355, 357).  Examination revealed limited range of motion in flexor, as well as soft tissue tenderness.  (*Id.*).  Clinical notes documented Plaintiff was morbidly obese.  (*Id.*).  X-rays showed no fracture or knee malalignment, well-preserved joint spacing, and mild periarticular spurring.  (Tr. 366).  Plaintiff was diagnosed with a left knee sprain, and was provided a work release form stating he could return to work on March 31, 2011, with no restrictions.  (Tr. 361).

On August 27, 2011, Plaintiff again went to the emergency room for knee pain following a fall at work causing him to twist and bump his knee.  (Tr. 368, 370).  Pain was noted at 7 out of 10 on a pain scale, but Plaintiff was able to bear weight on the injured knee.  (Tr. 370, 372).  X-rays revealed no acute findings, including maintained joint spaces, normal bony architecture, smooth osteochondral surfaces, and no suprapatellar joint effusion.  (Tr. 368, 383).  Plaintiff was discharged with pain medication and a knee immobilizer for comfort, to be used in addition to his cane, which he told a nurse he uses all the time.  (Tr. 371-72, 377).  Further, Plaintiff was

instructed to ice and elevate his knee for pain and swelling two to three times per day, and to follow up with orthopedics in one week.  (Tr. 377, 381).

Plaintiff's knee was X-rayed again on September 9, 2011.  (Tr. 390).  Imaging showed joint space narrowing within medial and patellofemoral compartments, and mild chronic depression deformity of the medial tibial plateau, but unchanged since his prior knee X-ray dated January 17, 2010.  (*Id.*).  Possible progression of joint space narrowing with medial articular femoral esteophytes showed more prominently than on the January 17, 2010 X-ray, but imaging showed no osteochondral lesions, joint effusion, or acute fractures.  (*Id.*).  Impression reported a chronic subtle depression deformity of medical tibial plateau, secondary degenerative osteoarthritis weight-bearing medial compartment, with possible slight progression of degenerative arthropathy, and mild degenerative osteoarthritis patellofemoral compartments, with no acute osscous finding.  (*Id.*).

On September 12, 2011, Plaintiff was examined by Michael Salata, M.D., at the University Hospital Department of Orthopedics, with a chief complaint of left knee pain stemming from his August 27, 2011 work injury.  (Tr. 397).  Dr. Salata noted since his initial injury Plaintiff had not had any treatment, including physical therapy or injections.   (*Id*).  Plaintiff told Dr. Salata he had returned to work but was having a difficult time working.  (*Id*).  Examination notes stated Plaintiff was obese and walked with an antalgic gait, and he exhibited 2/3 patellofemoral crepitans and some pain with patellar compression.  (*Id.*).  However, Plaintiff was able to perform straight leg raises and did not appear to have effusion.  (*Id.*).  Plaintiff was given a lidocaine injection and offered physical therapy, but it was noted that the therapy needed approval under his worker's compensation claim.  (Tr. 398).

On July 25, 2012, Plaintiff underwent a consultative physical examination conducted by Adi Gerblich, M.D., FCCP.  (Tr. 405).  Dr. Gerblich's report noted Plaintiff's chief complaints of knee pain and obesity, and that while he did not take any prescription medications, he took over the counter Tylenol and Motrin, but that his pain persisted.  (*Id.*).  Dr. Gerblich reported Plaintiff had a history of right knee pain for many years, and following a work injury the previous year to his left knee, now suffered from constant pain in both knees.  (*Id.*).  Plaintiff reported he had been to the emergency room and received shots in his knees on several occasions, and was finally told that he had arthritis.  (*Id.*).  He further told Dr. Gerblich he stopped working in October of 2011 due to personal and health reasons.  (*Id.*).

Plaintiff reported to Dr. Gerblich that he occasionally suffered from shortness of breath, and had lately started noticing swelling in his feet.  (Tr. 405).  He reported he walked with a cane and could walk one block, or climb about one-half a flight of stairs, before needing to rest.  (*Id.*).  Plaintiff further stated he cooked and dressed himself, but that his girlfriend shopped and did his laundry.  (*Id.*).

Dr. Gerblich performed a physical examination on Plaintiff, and found his weight to be 421.6 pounds, putting his body mass index at greater than 63.1.  (Tr. 406).  Plaintiff's chest produced decreased breath sounds bilaterally, but there was no wheeze or rhonchi.  (*Id.*).  Pulmonary function testing showed a mild obstructive ventilator defect that showed significant improvement following administration of bronchodilators, consistent with underlying bronchial asthma.  (*Id.*).  Dr. Gerblich noted no peripheral edema, and that Plaintiff's upper and lower body muscle powers were excellent.  (*Id.*).  Plaintiff exhibited normal range of motion on all joints, with limitations only due to his morbid obesity, in that Plaintiff could not flex his hip more than 90 degrees due to his obesity.  (*Id.*).  Dr. Gerblich found no crepitation and no swelling of the

6

knees, and noted Plaintiff walked in and out of the office with the use of a cane, and had a limp to the right.  (*Id.*).  In summary, Dr. Gerblich diagnosed knee pain and stage III obesity, and concluded Plaintiff had no limitations for sedentary activity.  (*Id.*).

On May 28, 2013, Plaintiff presented at the Mercy Regional Medical Center emergency room (Tr. 420).  After a series of tests to rule out other conditions, Plaintiff was discharged with a diagnosis of acute bronchitis/sinusitis.  (Tr. 421-44).  His weight was recorded at that time at 172.4 kg (380.07 pounds).  (Tr. 421).  Plaintiff returned to the emergency room on August 9, 2013, stating he had fallen and injured his knees. (Tr. 445, 447).  Plaintiff weighed 181.4 kg (399.91 pounds).  (Tr. 446).  X-rays showed no fracture of osseous destruction bilaterally, and possible mild narrowing of the medial compartment in Plaintiff's left knee.  (Tr. 450).  Imaging showed marginal spurring of the tibial spines, medial tibial plateau, and medial femoral condyle bilaterally, as well as posterior patella in the right knee.  (*Id.*).  Further, imaging showed no joint space effusion bilaterally.  (*Id.*).  Plaintiff was diagnosed with knee injury and knee pain, and prescribed Percocet.  (Tr. 446).

**C.  State Agency Reviewing Consultants**

On August 7, 2012, Leslie Green, M.D., a state agency consultant, reviewed Plaintiff's file and completed a residual functional capacity assessment.  (Tr. 114-16).  Dr. Green opined Plaintiff was capable of lifting 20 pounds occasionally and 10 pounds frequently; could stand and/or walk 6 hours in an 8 hour work day; could sit 6 hours in an 8 hour work day; could occasionally climb ramps and stairs but never climb ladders, ropes or scaffolds; could frequently balance and stoop, but only occasionally kneel, crouch, and crawl.  (Tr. 115-16).  Further, Plaintiff should avoid concentrated exposure to extreme temperatures, wetness, humidity, vibration, fumes, odors, dust gases, poor ventilation, and hazards.  (Tr. 116).  Dr. Green

supported her conclusions by acknowledging Plaintiff's obesity and bilateral knee pain, along with asthma, and his use of a cane for ambulation. (*Id.*). State agency reviewing physician, William Bolz, M.D., reviewed Plaintiff's file on September 27, 2012, and affirmed Dr. Green's RFC assessment. (Tr. 135-37).

### D.  Plaintiff's Testimony

At the hearing held October 8, 2013, Plaintiff testified that he is five feet, seven inches tall, and estimated he weighed 480 pounds. (Tr. 49). He stated he experienced stabbing knee pain when walking, and numbness and tingling when sitting down. (Tr. 50-51). Plaintiff testified he needed to elevate his legs to relieve swelling in his feet, ankles, and knees, which occurred after sitting for two hours, and that he can only be on his feet for three to four minutes at a time. (Tr. 50-51). Further, Plaintiff stated he had used a cane for the past year and a half, and that walking without the cane was painful. (Tr. 38, 48). Plaintiff testified he is able to climb stairs with his cane in one hand, and the other on the railing, but sometimes will sit and scoot up the steps backwards. (Tr. 49).

Plaintiff testified that he helps his girlfriend fold laundry, does the dishes while using his cane, but that he needed to sit after three or four minutes, and gets short of breath when he tries to sweep the floor. (Tr. 36, 47). Plaintiff stated that his girlfriend drives him around because he stopped driving two years prior due to pain in his knees, and uses a buggy when grocery shopping. (Tr. 36, 38). Plaintiff further testified that he did not have any income or medical insurance, and thus did not see a doctor on a regular basis. (Tr. 46-47). When necessary he sought treatment at emergency rooms, but Plaintiff stated he was not able to follow-up with a doctor because he has no money. (*Id.*). Plaintiff further testified that he takes only Tylenol for his pain. (Tr. 44).

### E.  Vocational Expert Testimony

At the initial hearing, dated June 5, 2013, the ALJ questioned VE Mosley regarding Plaintiff's vocational limitations. Based on hypotheticals posed by the ALJ, including a requirement of use of a cane for ambulation, Ms. Mosley testified that jobs at the light exertional level would require some level of accommodation for the use of a cane, and that such an individual would not be able to sustain work competitively.  (Tr. 74).  When asked if there would be sedentary jobs for an individual under the hypothetical limitations, she responded that, due to the need for a cane, she "[thought] that would also require some level of accommodation."  (Tr. 75).  Ms. Mosley further testified that an accommodation would be required specifically for unskilled work.  (*Id.*).

At the second hearing, held October 8, 2013, VE Robert Breslin testified.  (Tr. 56).  The ALJ presented the similar hypothetical limitations, including a requirement of use of a cane for ambulation.  (Tr.  59).  Mr. Breslin concluded such an individual would be limited to sedentary work, and stated that individuals working sedentary jobs can typically use a cane for ambulation. (Tr. 62).  Upon questioning by counsel, Mr. Breslin stated the identified sedentary jobs would not typically require the individual to lift and carry objects from one point to another.  (Tr. 63). Further, when presented with the testimony of Ms. Mosley from the prior hearing that sedentary unskilled jobs would require accommodation for use of a cane, Mr. Breslin stated that many sedentary jobs do not require ambulation other than to get to the work station.  (Tr. 64).

### III. SUMMARY OF THE ALJ'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.

2.  The claimant has not engaged in substantial gainful activity since August 11, 2011, the alleged onset date.

3. The claimant has the following severe impairments: degenerative joint disease/osteoarthritis of the knees, asthma, and obesity.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except lifting and carrying twenty pounds occasionally, ten pounds frequently, stand and/or walk for six hours out of an eight hour work day, sit for six hours out of an eight hour work day; unlimited push and pull other than shown for lift and/or carry; occasional climbing of ramps and stairs; never climbing ladders, ropes or scaffolds; frequent balancing and stooping; occasional kneeling, crouching, and crawling; must avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, and vibration; must avoid concentrated exposure to hazard[s] including no unprotected heights or walking on uneven terrain. In addition, the claimant requires the use of a cane for ambulation only.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on May 24, 1984 and was 27 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date.

8. The claimant has a limited education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 11, 2011, through the date of this decision.

(Tr. 16-22) (internal citations omitted).

## IV. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security

Income benefits only when she establishes disability within the meaning of the Social Security

Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20 C.F.R. §§ 404.1505, 416.905.

## V.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.*

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## VI.  ANALYSIS

### A.  RFC Analysis and Plaintiff's Credibility

Plaintiff argues that the ALJ committed reversible error by failing to account for all of Plaintiff's limitations in her RFC analysis.  Specifically, Plaintiff argues the ALJ did not provide a reasonable basis for discrediting his testimony as to his subjective complaints of pain and limiting impairments, and thus improperly excluded his asserted need to elevate his legs throughout the day.  Due to this omission, Plaintiff argues the ALJ's decision is not supported by substantial evidence.

Before moving to the fourth step in the sequential evaluation process, the ALJ must assess the claimant's RFC.  20 C.F.R. §§ 404.1520(e), 416.920(e).  The claimant's RFC signifies the claimant's remaining capacity to engage in work-related physical and mental activities despite functional limitations from the claimant's impairments.  20 C.F.R. §§ 404.1545, 416.945; *see also Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 530* (6th Cir. 1992). "Although physicians opine on a claimant's residual functional capacity to work, ultimate responsibility for capacity-to-work determinations belongs to the Commissioner." *Nejat v. Comm'r of Soc. Sec.*, 359 F. Appx. 574, 578 (6th Cir. 2009) (*citing* 20 C.F.R. § 404.1527(e)(1)). Thus, it is ultimately the ALJ's responsibility to analyze the evidence of record and determine Plaintiff's RFC.  While there may be evidence supporting a more restrictive RFC assessment, the ALJ's ruling must be upheld where adequate evidence supports it.  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) ("If the ALJ's decision is supported by substantial evidence, then reversal would not be warranted even if substantial evidence would support the opposite conclusion.") (*citing Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005)).

Plaintiff argues the ALJ's RFC analysis is not supported by substantial evidence because she failed to properly evaluate his credibility, particularly as related to his limitations relating to

his knee and joint impairments, as exacerbated by his obesity.  Specifically, Plaintiff asserts the ALJ did not articulate a reasonable basis for finding his subjective complaints of pain and corresponding limitations only partially credible.  The undersigned agrees.

Generally, "[a]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since [the] ALJ is charged with the duty of observing a witness's demeanor and credibility."  *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir. 2008) (*citing Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)).  Notwithstanding, "those determinations must be reasonable and supported by substantial evidence."  *Kalmbach v. Comm'r of Soc. Sec.*, 409 Fed. App'x 852, 865 (6th Cir. 2011); *see Walters*, 127, F.3d at 531. The ALJ is "not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (*quoting* S.S.R. 96-7p, 1996 WL 374186, at *4).

The Sixth Circuit follows a two-step process in the evaluation of a claimant's subjective complaints of disabling pain. 20 C.F.R. §§ 404.1529, 416.929; *Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994).  First, the ALJ must determine whether the claimant has an underlying medically determinable impairment which could reasonably be expected to produce the claimant's symptoms. *Rogers*, 486 F.3d at 247.  Second, if such an impairment exists, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms on the claimant's ability to work. *Id.*  The ALJ should consider the following factors in evaluating the claimant's symptoms: the claimant's daily activities; the location, duration, frequency and intensity of the claimant's symptoms; any precipitating or aggravating factors; the type, dosage, effectiveness and side effects of any medication taken to alleviate the symptoms; treatment, other than medication, the claimant receives to relieve the pain; measures used by the claimant to

13

relieve the symptoms; and statements from the claimant and the claimant's treating and examining physicians. *Id.*; *see Felisky*, 35 F.3d at 1039-40; S.S.R. 96-7p.

Acknowledging the two-step process, the ALJ first reviewed the medical evidence of record and found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (Tr. 18-20). The ALJ then concluded, however, that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely credible. (Tr. 20). In support of her credibility determination, the ALJ provided two reasons: (1) the evidence showed Plaintiff did not take any prescription pain medication, other than Tylenol or Motrin, to alleviate the pain (although acknowledging the pain was still persistent); and (2) that Plaintiff had not had any surgeries or physical therapy, although physical therapy was offered. (*Id.*).

The undersigned agrees with Plaintiff that these reasons do not provide a reasonable basis for discrediting Plaintiff's statements. It is generally appropriate for an ALJ to consider a claimant's medication and treatment in evaluating his symptoms and pain. 20 C.F.R. 404.1529(c)(3)(iv)-(v); *see Johnson v. Comm'r of Soc. Sec.*, 535 Fed. App'x 498, 507 (6th Cir. 2013). However, an ALJ should not discredit a claimant's subjective complaints because he did not pursue more aggressive treatment options if such treatment was not obtained due to lack of insurance and/or an inability to pay for such treatment. *See Rozgowski v. Callahan*, 982 F. Supp. 660, 670 (E.D. Mo. 1997) ("[T]he ALJ must consider a plaintiff's allegation that he has not sought medical treatment or used medication because of a lack of finances.") (*citing Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) (inability to afford prescribed medical treatment excuses non-compliance with treatment plan)); *see Johnson, 535 Fed. App'x at 507* ("[A] claimant should be allowed to explain his or her reasons for not pursuing certain treatment

options.") (*citing* S.S.R. 96-7p; *citing Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1162 (9th Cir. 2008) ("[A]lthough a conservative course of treatment can undermine allegations of debilitating pain, such fact is not a proper basis for rejecting the claimant's credibility where the claimant has a good reason for not seeking more aggressive treatment.")).  Here, the ALJ improperly relied on Plaintiff's lack of more aggressive treatment, despite Plaintiff's clear reasoning that he did not pursue more aggressive treatment because he did not have insurance and could not afford it, reasoning which was neither acknowledged nor explicitly rejected by the ALJ. (Tr. 19-20, 46-47).

The ALJ's sole reliance on Plaintiff's failure to seek more aggressive treatment in finding his statements less than fully credible is not harmless error.  The Sixth Circuit has explicitly found harmless error analysis is proper for credibility determinations in the social security context. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012).  An adverse credibility finding based *partially* on invalid reasons will be deemed harmless, and thus not require remand, where the ALJ also provided other substantial evidence in support of his determination.  *Johnson*, 535 Fed. App'x at 507 (*citing Ulman*, 693 F.3d at 714).  Here, however, the ALJ offered no other reasons for discrediting Plaintiff's subjective statements other than the invalid reason of not pursuing more aggressive treatments, and thus cannot constitute harmless error under the established rule.  *See Ulman*, 693 F.3d at 713-14 (upholding the district court's order stating Plaintiff's argument of error in ALJ's credibility analysis "would be persuasive if the ALJ had based his credibility finding solely or primarily on the factual error," and had not provided "other, objective evidence in support of his credibility determination.").

Further, this Court declines to accept the government's *post hoc* rationalization to support the ALJ's credibility analysis.  "[C]ourts may not accept appellate counsel's *post hoc*

15

rationalizations for agency action.  It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Berryhill v. Shalala*, 4 F.3d 993, at *6 (6th Cir. Sept. 16, 1993) (unpublished opinion) (*quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983) (citation omitted)).  *See also Hunter v. Astrue*, No. 1:09-CV-2790, 2011 WL 6440762, at *4 (N.D. Ohio Dec. 20, 2011) (remanding where the ALJ failed to provide a meaningful review of the record evidence in relation to the listing and rejecting Defendant's *post hoc* rationalizations).  The government contends that the ALJ properly considered Plaintiff's lack of more aggressive treatment because, despite a lack of insurance or financial ability to obtain medical care, he could have sought out more aggressive treatment by returning to the emergency room, or from free clinics.  Further, the government asserts the ALJ could properly consider that Plaintiff's doctors did not *recommend* surgery, regardless of whether Plaintiff was able to afford it.  However, this rationale is asserted only by the government, and may not be considered to explain what the ALJ may have been thinking when she determined Plaintiff's statements lacked credibility.  *See Berryhill*, 4 F.3d 993 at *6; *see Hunter* 2011 WL 6440762 at *4.  Further, despite making the general assertion that Plaintiff's lack of aggressive treatment constituted "only some of the reasons the ALJ gave for finding Plaintiff not credible," the government fails to point out any other reasons actually expressed by the ALJ in her decision.  (Def. Brief p. 8).

Accordingly, the ALJ did not provide a reasonable basis for discrediting Plaintiff's testimony as to his subjective complaints of pain and limiting impairments.  The ALJ's decision is therefore not supported by substantial evidence, and remand is necessary.

**B.  Step Three Listing Analysis – Listing 1.02 and Obesity**

Plaintiff maintains that evidence in the record established that his degenerative joint disease of the knees, in combination with his obesity, was equivalent in severity to the requirements of Listing 1.02.  In support, Plaintiff points to his BMI, which was greater than 63.1 at a consultative evaluation, medical imaging, and Plaintiff's testimony regarding the added limitations caused by his obesity.    Additionally, Plaintiff alleges that the ALJ failed to sufficiently account for Plaintiff's obesity in combination with his severe impairments, and did not adequately articulate why she found his combination of impairments did not meet or equal the listing.

At the third step of the disability evaluation process, the ALJ must evaluate whether the claimant's impairments satisfy the requirements of any of the medical conditions enumerated in the Listing of Impairments within 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R §§ 416.920(a)(4)(iii), 404.1520(a)(4)(iii); *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 491 (6th Cir. 2010).  The Listing of Impairments recites a number of ailments which the Social Security Administration has deemed "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. §§ 416.925(a), 404.1520(a).  Each listing describes "the objective medical and other findings needed to satisfy the criteria of that listing." 20 C.F.R. §§ 416.925(c)(3), 404.1520(c)(3).

In order to "meet" a listing, the claimant must satisfy all of the listing's requirements. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 653 (6th Cir. 2009).  However, if the claimant does not meet all of the listing's requirements, he may still be deemed disabled at this stage if his impairments "medically equal" the listing.  20 C.F.R. §§ 416.926(b)(3), 404.1526(b).  To do so, the claimant must present "medical findings" that show his impairment is "equal in severity to all the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531,

110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (emphasis in original).  It is not sufficient for a plaintiff to demonstrate that the overall functional impact of his impairments is as severe as that of a listed impairment. *Id.*

Plaintiff contends that he satisfied the requirements of section A of Listing 1.02, which states:

> Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A.    Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. § Pt. 404, Subpt. P, App. 1

Here, the ALJ concluded at Step Two of his analysis that Plaintiff had the following severe impairments:  degenerative joint disease/osteoarthritis of the knees, asthma, and obesity. (Tr. 17).  At Step Three, he found that despite Plaintiff's severe impairments, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (*Id.*).  The ALJ specifically considered Listing 1.02, and found the record did not show evidence of all the requirements of the listing. (*Id.*).  The ALJ did not mention any specific evidence relied on, but recited each requirement under the listing in determining the record did not support a finding that Plaintiff's conditions reached listing-level severity.  (*Id.*)  The ALJ further acknowledged that, although obesity is no longer considered a listed impairment, the Administration recognized that it may worsen existing impairments so as to meet the requirements of a listing.  Nonetheless, here the ALJ found that, even in combination

18

with his obesity, Plaintiff's condition did not meet or equal the criteria for a listed impairment. (Tr. 17-18).

Relying on the Sixth Circuit's decision in *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411 (6th Cir. 2011), Plaintiff argues that the ALJ's failure to provide a discussion of evidence in the record relevant to Listing 1.02, including evidence relating to his obesity, renders the Step Three finding to be without support of substantial evidence. In *Reynolds*, the Sixth Circuit set forth the requirements for an ALJ's step three analysis as follows:

> In short, the ALJ need[s] to actually evaluate the evidence, compare it to [the criteria] of the Listing, and give an explained conclusion, in order to facilitate meaningful judicial review. Without [such articulation], it is impossible to say that the ALJ's decision at Step Three was supported by substantial evidence.

*Id.* at 416. Decisions in this district applying *Reynolds* have indicated that a "rote recitation of boilerplate language by an ALJ" is insufficient to carry the listing analysis. *Grohoske v. Comm'r of Soc. Sec.*, No. 3:11-CV-410, 2012 WL 2931400, at *3 (N.D. Ohio July 18, 2012) (A "perfunctory recitation of the analytic formula, without any development, as required by *Reynolds*, of how particular items of record evidence do or do not match specific criteria of the listing, leaves the reviewing court without a basis for meaningful review, and ultimately precludes a finding that this decision was supported by substantial evidence.") (*quoting Shea v. Astrue*, No. 1:11-CV-1076, 2012 WL 967088 (N.D. Ohio Feb. 13, 2012), *report and recommendation adopted sub nom. Shea v. Comm'r of Soc. Sec.*, No. 1:11-CV-1076, 2012 WL 967072 (N.D. Ohio Mar. 21, 2012)); *Davis v. Comm'r of Soc. Sec.*, No. 5:12-CV-2577, 2013 WL 3884188 (N.D. Ohio July 26, 2013). However, a heightened articulation standard is not required at Step Three of the sequential evaluation. *Marok v. Astrue*, No. 5:08-CV-1832, 2010 WL 2294056, at *3 (N.D. Ohio June 3, 2010) (*citing Bledsoe v. Barnhart*, No. 04–4531, 2006 WL

19

229795, at *411 (6th Cir. Jan. 31, 2006) (*citing Dorton v. Heckler, 789 F.2d 363, 367 (6th Cir. 1986)*). Nonetheless, the ALJ must make sufficiently clear the reasons for her listing determination so that the Court can conduct a meaningful review. *Id.*

Here, the Court concludes that the ALJ's analysis of Listing 1.02 failed to adequately address whether Plaintiff satisfied the listing. Although she considered the appropriate listing, the ALJ did little more than state its requirements, and summarily assert Plaintiff did not meet the listing, even considering his obesity in combination with his other impairments. (Tr. 17-18). This explanation lacks "any development, as required by *Reynolds*, of how particular items of record evidence do or do not match specific criteria of the listing." *Grohoske*, 2012 WL 2931400 at *3. Despite the government's *post hoc* rationalizations pointing to evidence that could arguably show Plaintiff did not meet the listing, such explanation is insufficient where the ALJ did not cite such reasons in her decision. *Berryhill*, 4 F.3d 993 at *6; *Hunter*, 2011 WL 6440762 at *4.

Nor does the ALJ's opinion at Step Four of the sequential analysis provide sufficient discussion of the evidence so as to allow the Court to conclude that Plaintiff's impairments did not meet the listing. An ALJ's failure to provide a full discussion at Step Three may be harmless error where her findings at Step Four provided sufficient information for the Court to determine that no reasonable administrative fact finder would have resolved the matter differently." *Shea*, 2012 WL 967088 at *11 (*citing Hufstetler v. Comm'r of Soc. Sec.*, No. 1:10CV1196, 2011 WL 2461339, *10 (N.D. Ohio June 17, 2011); *Malone v. Comm'r of Soc. Sec.*, 507 Fed. App'x 470, 472 (6th Cir. 2012) ("finding that, based on a review of the ALJ's decision as a whole, remand was not necessary even though the ALJ's decision contained only a conclusory statement regarding Step Three")). Here, at Step Four the ALJ provided a detailed account of the medical

evidence on the record, including emergency room treatment notes, objective image testing, and analysis of the findings and opinions of the state agency examining and reviewing consultants. (Tr. 18-20). However, due to the error in the ALJ's credibility analysis as described in the previous section, the RFC analysis is not supported by substantial evidence, and therefore cannot provide sufficient information to uphold the ALJ's findings at Step Three. *See Grohoske,* 2012 WL 2931400 at *3, n.53 (remanding, noting "the ALJ's discussions at step four were not so extensive as to provide sufficient evidence of [the plaintiff's] impairments in light of the listing as to permit a court to conclude from other parts of the ALJ's opinion that the listings were not met.").

Accordingly, on remand, the ALJ is directed to discuss the specific evidence relevant to the appropriate listings, including Listing 1.02, and to explain whether, in light of that evidence, Plaintiff's impairments satisfy a listing.

### C. Vocational Expert Testimony

Because remand is appropriate to address the deficiencies in the ALJ's RFC and Listings analyses, it is not necessary for this Court to reach the merits of Plaintiff's third assignment of error to determine whether the ALJ sufficiently resolved conflicts between the respective testimonies of the two vocational experts. However, the undersigned acknowledges that "resolution of evidentiary conflicts lies within the exclusive domain of the ALJ, including the reconciliation of contradictory vocational expert testimony." *Ehrhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 541 (6th Cir. 1992). Thus, on remand, the ALJ is instructed to be mindful of this duty and afford a complete analysis of the evidence of record, including the testimony of vocational experts.

### VII. DECISION

21

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is not supported by substantial evidence.  Accordingly, the undersigned recommends that the decision of the Commissioner be VACATED, and the case be REMANDED back to the Social Security Administration.


s/ Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge


Date:  April 7, 2016.




ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1).  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).